Verdier Associates, Ltd. v. Commissioner.
Verdier Assocs. v. Commissioner
Docket No. 6147.
United States Tax Court
1946 Tax Ct. Memo LEXIS 246; 5 T.C.M. (CCH) 176; T.C.M. (RIA) 46061; March 6, 1946
Morse Erskine, Esq., and W. J. Renz, C.P.A., 520 Standard Oil Bldg., San Francisco, Calif., for the petitioner. Earl C. Crouter, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in income tax for the fiscal year ended January 31, 1942 in the amount of $396.88. Petitioner concedes liability for the income tax deficiency. Respondent determined deficiencies in petitioner's personal holding company surtax liability for the fiscal years ended January 31, 1941 and *247 January 31, 1942 in the respective amounts of $36,267.59 and $50,352.47. Petitioner seeks redetermination of its personal holding company surtax liability. The only question presented relates to the amounts which may be taken as credits in each taxable year under section 504(b) of the Internal Revenue Code in determining the correct "undistributed subchapter A net income" as amounts used or irrevocably set aside to pay indebtedness incurred prior to January 1, 1934. Respondent's original determination was that no credit was allowable in either year under section 504(b); but he now concedes that petitioner is entitled to a credit of $20,000 in the first fiscal year involved, and a credit of $30,000 in the second fiscal year. Petitioner claims credits in each year in the respective amounts of $36,502.43 and $43,497.57, which amounts are less than the amounts taken as credits in the returns. In view of the concessions made by the parties upon brief, the deficiencies must be redetermined under Rule 50, whether or not petitioner's present contention is sustained. Petitioner's returns were filed with the collector for the first district of California. Most of *248 the facts have been stipulated. Findings of Fact The stipulation of facts is adopted as part of our findings of fact, and is incorporated herein by reference. We set forth as much of the stipulated facts as is necessary for understanding the issue. Petitioner, a personal holding company, was organized on September 29, 1932 under the laws of California. Petitioner acquired stock of City of Paris Dry Goods Company of San Francisco, (hereinafter referred to as C of P), in 1932 in amounts which gave it control of C of P. Petitioner has held such controlling interest up to the present time. In connection with its acquisition of the controlling block of stocks of C of P, petitioner purchased stock in October, 1932 from B. F. Schlesinger & Sons, Inc., for $400,000, giving eight notes for $50,000, each, all of which were dated October 19, 1932. The notes were to become due and payable, one on June 30 of each succeeding year, beginning June 30, 1933 and ending June 30, 1940. They bore interest at the rate of 5 percent per annum. Notes were paid on June 30 of 1933, 1934, 1935 and 1936, a total of $200,000, leaving an unpaid balance of principal in the amount of $200,000. On January 14, 1937, petitioner *249 refunded the indebtedness incurred on October 19, 1932, by borrowing $200,000 from Anglo California Bank of San Francisco. Petitioner gave four notes to the Anglo California Bank as follows: Note for $30,000 due June 30, 1937; note for $30,000 due June 30, 1938; note for $30,000 due June 30, 1939; note for $110,000 due June 30, 1940. All of the notes were dated January 16, 1937. They bore interest at the rate of 5 percent per annum. Petitioner used the loan of $200,000 to pay and retire the four outstanding notes payable to Schlesinger & Sons, Inc., which notes were paid on January 14, 1937. In 1937 and 1938 two of the notes to Anglo California Bank were paid in the total sum of $60,000. On June 30, 1939 and June 29, 1940, the Bank was paid $30,000 and $20,000 in a manner hereinafter described, so that as of June 29, 1940 the Bank had been paid the total amount of $110,000. On July 1, 1940, petitioner gave the Bank three new notes dated July 1, 1940 in the face amount of $30,000, each, for the balance due of $90,000. These notes were payable on June 30 of 1941, 1942, and 1943, respectively. These notes were paid in a manner hereinafter described, $30,000 on May 21, 1941, and *250 $60.000 on March 16, 1942. Petitioner did not maintain and use a bank account except for special purposes which are not material. From the time petitioner was organized, C of P paid its expenses. A running account, or open account, with petitioner was kept on the books of C of P. Likewise, petitioner kept on its books a similar running account with C of P. Petitioner debited the account for dividends and credited the account for all payments made for it by C of P. The running accounts represented a debtor-creditor relationship between petitioner and C of P. C of P never paid petitioner cash for dividends declared on its stock owned by petitioner. Rather, C of P credited its running account with petitioner with dividends, as they became payable, and debited the account for all payments which it made for and on behalf of petitioner. C of P made the payments on the notes of petitioner held by the Anglo Bank. From time to time, C of P paid obligations of petitioner when there was no credit balance in the account, thereby advancing funds on behalf of petitioner which petitioner was obligated to repay to C of P. The running account was debited for all such advances by C of P. On January *251 31 of the years 1937 to 1941, both years inclusive, the running account showed balances owing to C of P by petitioner, and petitioner was the debtor. It was not until January 31, 1942 that the balance was reduced to zero. The balances on January 31, 1937 to January 31, 1942, inclusive, were as follows: Date
Balance
January 31, 1937
$10,168.12 (debit)
January 31, 1938
11,534.20 (debit)
January 31, 1939
13,155.96 (debit)
January 31, 1940
43,694.09 (debit)
January 31, 1941
19,658.80 (debit)
January 31, 1942
The following schedules are based upon petitioner's Exhibit 2, the running account on the books of C of P. From February 1, 1939 to January 31, 1940 the debits for expenses of petitioner and for payments on petitioner's notes, and the credits to petitioner for dividends declared and payable on C of P stock, and the balances owing to C of P at the beginning and the end of the year in the running account of petitioner with C of P were as follows: Date
Description
Debits
Credits
Balance
2/ 1/1939
Balance
$13,155.96
2/28- 3/31
Expenses
$ 2,840.58
15,996.54
4/ 4
Dividends
$ 5,512.50
10,484.04
4/29
Expenses
1,167.44
11,651.48
5/31
Dividends
1,837.50
9,813.98
5/31
Expenses
40.00
9,853.98
6/30
Payment on note to Bank
30,000.00
39,853.98
With interest
687.50
40,541.48
6/30- 7/31
Expenses
213.09
40,754.57
8/31
Dividends
1,837.50
38,917.07
8/31-10/31
Expenses
843.74
39,760.81
11/30
Dividends
1,837.50
37,923.31
11/30- 1/31
Expenses
5,770.78
43,694.09
*252 The above schedule shows that from February 1, 1939 to January 31, 1940, C of P made advances for petitioner's account prior to declarations and credits of dividends at various dates; it further shows that petitioner reimbursed C of P for such advances out of dividends as they were credited to petitioner. During the fiscal year ended January 31, 1940, petitioner became indebted to C of P in the amount of $30,000 principal, exclusive of interest, which C of P paid on June 30, 1939, on the principal amount of notes due by petitioner to the Anglo California Bank. Petitioner did not discharge this indebtedness, or any part thereof, during the fiscal year ended January 31, 1940. From February 1, 1940 to January 31, 1941 the debits, credits and balances in the running account of petitioner with C of P were as follows: Date
Description
Debits
Credits
Balance
2/ 1/1940
Balance
$43,694.09
2/29
Expenses
$ 40.00
43,734.09
2/29
Dividends
$ 1,837.50
41,896.59
2/29- 4/30
Expenses
1,998.84
43,895.43
5/15
Dividends
1,837.50
42,057.93
5/31
Expenses
114.20
42,172.13
5/31
Dividends
41,923.00
249.13
6/29
Expenses
40.00
289.13
6/29
Payment on note to Bank
20,000.00
20,289.13
With interest
2,520.83
22,809.96
7/31- 8/31
Expenses
155.34
22,965.30
8/31
Dividends
1,837.50
21,127.80
9/30-10/31
Expenses
149.47
21,277.27
11/15
Dividends
1,837.50
19,439.77
11/30- 1/31
Expenses
219.03
19,658.80
*253 The above schedule shows that from February 1, 1940 to January 31, 1941 petitioner reimbursed C of P for advances in the same manner as that described for the preceding fiscal year. The balance of $43,694.09 on February 1, 1940, included the $30,000 payment made to the Bank by C of P for petitioner's account on June 30, 1939, and C of P was reimbursed for that advance in full as of May 31, 1940 out of dividends credited on that date. On January 31, 1941, the balance owing to C of P was $19,658.80, which included part of the $20,000 paid to the Bank by C of P on petitioner's notes on June 29, 1940, and for this payment petitioner reimbursed C of P $3,385.87 [1] during the year ended January 31, 1941. During the fiscal year ended January 31, 1941, petitioner paid C of P the total sum of $33,385.87 to discharge its indebtedness to C of P for advances on account of payments on notes to the bank. *254 Petitioner discharged part of the pre-1934 indebtedness during this fiscal year to the extent of $33,385.87 out of current dividends as they were constructively received by credits made in the running account. From February 1, 1941 to January 31, 1942 the debits, credits and balances in the running account of petitioner with C of P were as follows: Date
Description
Debits
Credits
Balance
2/ 1/1941
Balance
$19,658.80
2/20
Dividends
$ 1,837.50
17,821.30
2/20
Dividends
17,821.30
0.00
2/21- 5/21
Expenses
$ 733.86
733.86
3/31- 4/30
Other income
40.33
693.53
5/21
Payment on note to Bank
30,000.00
30,693.53
With interest
1,066.67
31,760.20
5/21
Dividends
1,837.50
29,922.70
5/21
Dividends (bal. 2/20)
12,123.70
17,799.00
5/21
Dividends
17,799.00
0.00
6/30- 1/31
Expenses
4,474.02
4,474.02
6/30- 1/31
Other income
156.84
4,317.18
1/31
Dividends
4,317.18
0.00
The above schedule shows that from February 1, 1941 to January 31, 1942 petitioner reimbursed C of P for advances in the same manner as that described for the preceding fiscal years. The balance owing to C of P of $19,658.80 on *255 February 1, 1941, included $16,614.13 ($20,000 less $3,385.87) which was part of the $20,000 payment made to the Bank by C of P for petitioner's account on June 29, 1940, for which C of P had not been reimbursed during the preceding fiscal year. C of P was reimbursed for this balance of $16,614.13 in full as of February 20, 1941. On May 31, 1941 C of P made a payment of $30,000 to the Bank on petitioner's notes, and C of P was reimbursed for that advance in full as of the same date, thereby resulting in no more than a momentary indebtedness, if any, incurred by petitioner. During the fiscal year ended January 31, 1942, petitioner owed C of P $16,614.13, being a balance due on $20,000, exclusive of interest, which C of P had paid on June 29, 1940 on the principal amount of notes due by petitioner to the Anglo California Bank. During the same fiscal year petitioner paid, through C of P, an additional $30,000 principal, exclusive of interest, on the principal amount of its notes to the Bank. The total part of the pre-1934 indebtedness thus discharged during this year by petitioner was $46,614.13, which was paid out of current dividends as they were constructively received by credits *256 made in the running account. Petitioner maintained its books and records on a cash basis. Opinion Respondent took the position originally, in making the determinations which give rise to the deficiencies, and at the hearing, that the refinancing in January 1937 of the indebtedness to Schlesinger & Sons, which was incurred in 1932, resulted in a change of creditors and obligations. He took the view that a new indebtedness was incurred on January 14, 1937 with the Anglo California Bank. Upon this construction of the refinancing of the indebtedness in 1937, it was held that petitioner was not entitled to any credit under section 504(b) of the Internal Revenue Code[2] for purposes of computing its personal holding company surtax. Subsequently, on brief, respondent receded from his original position, and conceded that the refinancing of the Schlesinger indebtedness in 1937 did not have the effect of changing the date when the indebtedness was incurred. Respondent's present position is explained in his brief by reference to T.D. 5460, approved June 19, 1945, Cumulative Bulletin 1945, page 260; and Commissioner v. Grant Trading Co., Inc., 135 Fed. (2d) 358. *257 The Treasury Decision referred to above had the effect of amending section 19.504-2 (a) of Regulations 103 by striking the last sentence of the second paragraph of that section and substituting in lieu thereof the following: In the case of refunding, renewal or other change in the form of an indebtedness, the giving of a new promise to pay by the taxpayer will not have the effect of changing the date the indebtedness was incurred. The above amendment to the regulations is applicable to taxable years beginning after December 31, 1933. Petitioner keeps its books and reports its income on a cash basis according to a fiscal year which ends on January 31st. The two taxable periods before us are February 1, 1940 to January 31, 1941, and February 1, 1941 to *258 January 31, 1942. In order to obtain the benefits of section 504(b), insofar as material here, the taxpayer must meet two requirements; there must be an indebtedness incurred prior to January 1, 1934, and amounts must be used or irrevocably set aside to pay or to retire such indebtedness. The facts show that petitioner's chief source of income was dividends on the stock of C of P, and petitioner did not handle its own cash. However, petitioner received constructively all of the dividends on its C of P stock. During the fiscal year ended January 31, 1941 the dividends paid on C of P stock to petitioner amounted to $49,271, and $20,000 was paid to the Anglo California Bank upon one of petitioner's notes on June 29, 1940. Also, during the fiscal year ended January 31, 1942, dividends in the total amount of $55,736.18 were declared on C of P stock owned by petitioner, and were credited to petitioner, and $30,000 was paid by C of P to the Bank on notes of petitioner on May 21, 1941. Respondent in his brief does not explain what reasoning he applies in conceding that the two above payments to the Bank, totalling $50,000, may be deducted from the undistributed net income of petitioner *259 under section 504(b) in the respective taxable years. In his brief he specifically identifies these payments as the payments on a pre-1934 indebtedness for which he concedes credits are allowable. The facts show that both of the payments were made by C of P and were charged against petitioner on the running account. It appears as though respondent takes the view, as he could do, that these two payments to the Bank were in effect made by petitioner even though they were made in fact by C of P. It appears, further, that respondent contends that petitioner is not entitled to any credits under section 504(b) for any payments made by petitioner to C of P to reimburse it for the payments it made to the Bank on the indebtedness of petitioner at times when petitioner was without funds. This serves to explain respondent's objection to a credit for an additional amount of $30,000 which petitioner claims. Respondent's present contention is untenable under the rule expressed in B. D. Phillips, Inc. v. Commissioner, 134 Fed. (2d) 73. First, the evidence shows that the aggregate sum of $80,000, which petitioner claims to be the total of credits allowable in the taxable years under *260 section 504(b) was paid on a pre-1934 indebtedness. Second, the evidence shows, and it has been found as a fact, that the entries in the running account evidenced a debtor-creditor relationship between petitioner and C of P; i.e., for the fiscal year ended January 31, 1940, there were accounts payable of petitioner due to C of P totalling $43,694.09, which included $30,000 paid by C of P on petitioner's pre-1934 debt to the Bank on June 30, 1939; and for the fiscal year ended January 31, 1941, there were accounts payable to C of P totalling $19,658.80. Upon the finding of fact that petitioner was obligated to repay C of P for all advances and payments which it made for petitioner when petitioner was without funds, including payments made to the Bank on petitioner's notes, respondent's contention falls. Respondent now concedes that part of the 1932 indebtedness of petitioner was still owed by it in the taxable years involved. When C of P paid $30,000 to the Bank on petitioner's notes on June 30, 1939, and $20,000, on June 29, 1940, when petitioner's running account showed that petitioner was without funds, C of P then became an obligee of petitioner, and $50,000 of the 1932 indebtedness *261 was then owing to C of P, and the balance of the 1932 debt was owing to the Bank. Thus, in this case, as in the case of B. D. Phillips, Inc., supra, at different times the 1932 debt was owing to different obligees, the Bank and C. of P. But, as was held in Commissioner v. Sun Pipe Line Co., 126 Fed. (2d) 888, "the personality of the creditor is non-determinative". B. D. Phillips, Inc., supra, page 76. Since the pre-1934 indebtedness is readily identified and traced through succeeding years, including the taxable years, the only problem in this proceeding is to determine what amounts petitioner used or irrevocably set aside out of its own funds in each of the taxable years to pay or retire part of the 1932 indebtedness. This is a question of fact. Petitioner has introduced the necessary proof from which findings of fact have been made. Turning to the question of the amounts which petitioner set aside and paid to C of P on the dates when dividends were constructively received by petitioner, primary consideration must be given to the fact that petitioner owed C of P a balance of $43,694.09 on January 31, 1940. This balance included the $30,000 *262 payment which C of P had made to the Bank for petitioner's account on June 30, 1939, and we have found as a fact that C of P was not reimbursed for such payment during the fiscal year ended January 31, 1940. The starting point of our considerations is, therefore, the fiscal year beginning February 1, 1940. It is unnecessary to repeat the facts relating to petitioner's running account with C of P. Schedules of that account have been set forth in the findings of fact, together with findings of fact with respect to the amounts which were paid on the pre-1934 indebtedness in each taxable year, for which credits should be allowed. It is held that petitioner is entitled to credits under section 504(b) in the taxable years in the respective amounts of $33,385.87 and $46,614.13. Decision will be entered under Rule 50. Footnotes
1. On June 29th, the balance owing C of P was $289.13, and on that date C of P paid the Bank $20,000 on petitioner's notes, increasing the balance to $20,289.13. Thereafter C of P deciared and credited dividends totalling $3,675, all of which must be treated as applied to discharge the oldest debts shown in the account, so that $3,385.87 was applied to reimburse C of P for the advance of $20.000.↩
2. SEC. 504. UNDISTRIBUTED SUBCHAPTER A NET INCOME. For the purposes of this subchapter the term "undistributed subchapter A net income" means the subchapter A net income (as defined in section 505) minus - * * * * *
(b) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness;↩